The next case this morning is 20-1130 North Mill Street v. City of Aspen. Counsel for Appellant, you may proceed when you're ready. Thank you, Your Honor. May it please the Court, Christopher D. Bryan, appearing on behalf of Appellant North Mill Street. We're here today on an appeal from a district court order dismissing my client's complaint for lack of subject matter jurisdiction under a 12b1 motion. The primary focus of the briefing so far has been the Whiteness Doctrine, which I believe will take up most of our time today. For a little bit of background, this case concerns the City of Aspen's decision to enact an ordinance in 2017 and the unequal impact that that ordinance has had on the property that's owned by my client. That ordinance made changes to several sections of the City's land use code, and that change is relevant here because it eliminated free market residential uses at the property. As of the enactment of this ordinance, the property now owned by North Mill Street is the only property in this zone district that has not been developed to include free market residential development. Instead of challenging that ordinance right away, my client's predecessor tried to change the zoning of the property by filing a rezoning petition with the City of Aspen. That rezoning petition was denied by the Planning and Zoning Commission on a 6-1 vote, and that decision was upheld by the City Council unanimously. At that point, my client's claims had ripened. Now, I know this Court is aware of the Supreme Court decision in 2019 in Nick v. Township of Scott, which overturned, in part, the Williamson County decision from 1986. That's important because I believe that that shows a pendulum swing in our federal jurisprudence about regulatory takings claims and ripeness. That's important because the thing that we're asking this Court to do is to honor that and to also fill a hole in Tenth Circuit jurisprudence with respect to finality and the futility aspect of that. One of the cases that we brief is Palo Zolo in 2001. That's a Supreme Court decision that says, look, a government cannot make applicants and land-use owners make endless applications just for the sake of making applications. The test is, do we have a reasonable degree of certainty what the governing body is going to require or to prohibit for certain privately-owned property? And that is the question that we need to determine. And to that point, does the land code provide the same criteria to govern rezoning as it does for this variance request? Well, to speak precisely, Your Honor, this is not a variance request because this zone district does not allow variances except for things that don't matter here, like off-site storage. Your client could not, as a matter of law, sought a variance in this case? As my understanding, that was one of the things that was on the table here that the district court considered in its ripeness determination. Well, I want to distinguish your use of the word variance from how the land-use code describes variance. I think you're describing something called a PD review, a planned development review, which is a different application, but it's not, strictly speaking, a variance. A variance allows for a different type of use to be applied for within the existing zone district. That's exactly what I'm talking about. So help me with that. Why wouldn't that have been possible here? Because a variance for free market residential is not allowed. There's an ordinance that bans it. It prohibits it. Before that ordinance went into effect, free market residential was permitted as a conditional use only. And if the city had not enacted this ordinance, the city might very well have a good argument here that I should have gone to that, that I should have done that. But by enacting the ordinance that prohibits free market residential use at this property, they took away their own discretion, the discretion that they now claim they have on a planned development application. Well, counsel, whether you call it planned development or variance, and I understand your argument about variance, but it seems to me that the question remains, aren't the standards for rezoning different from and actually more stringent than they are for a planned development process? My answer to that question, your honor, is that they are similar, not identical, but for pertinent purposes, they have enough of the same elements. So when our rezoning application was denied, there were findings made by the city that effectively precluded them from saying the exact opposite if we submitted a differently named application. Why would findings on the rezoning bind them in a planned development review? Because... We're not talking about res judicata, collateral estoppel, we're talking about a decision that was made on the rezoning, and then down the road, an application for planned development. Why would the city's hands be tied at that point? They would be for the following reasons, your honor. As a legal matter they are? Yes, under their own regulatory documents. The city's civic master plan from 2006, the Aspen area community plan. Where does it say that? Where does it say that the city can't change its mind? They can change their mind, but they still have to comply with their own governing documents. That's not the question. The question is, if there is a planned development application, can the city consider that a new and granted? They cannot... In light of everything that's happened. If they can't do it, where's your authority for that? And I don't want just a general reference, where is the specific authority? Yes, your honor. I'm happy to answer that question, because it's in their own land use code. For a PD... Okay, tell us where it is. Okay. It's in land use code section 26.445.060. Slow down, we need to write this down. Sure. Section 26.445.060. It says that use variations from permitted and conditional uses allowed by the underlying zone district can be approved only if the review criteria are met. Here, Fremont residential is neither a permitted or conditional use. It used to be until they prohibited it. Did you use the language use variation? Because there's a long distance variation versus use variation. There's a distinction there. I thought I heard you clearly say use variation in what you were reading. Right, and the use... That's a different section. Well, the use that we're asking for is free market residential as a component of a redevelopment process. The city's hands are tied. It took away its discretion to do that. Now, help me out. I know we're... Judge Matheson had just asked, but somewhere either in your response brief, I saw the discussion that varied differently on variance versus use variance. Was that in your brief? Yes, and that's why it's important that we... It wasn't responded to, as I recall. I'm sorry? It was not responded to because it was brought up in your reply brief. Right. The reply brief talks about a variance to limited and conditional uses for a zone. But you weren't reading from that section. That was my whole point in your answer. Right. I was... You're correct. I was answering Judge Matheson's question about where the PD criteria is set forth. And it says that... Is that in the use variance text? Right. And I'll... Right? I'm sorry? Did you say right? That what you were reading is from the use variance code part of the city's... Yes, it says use variations can be approved only if the review criteria are met. And it goes on. The uses proposed in the application are compatible with the character of the existing and planned land uses in the surrounding areas. The city already said it's not compatible. The city told us in the rezoning petition hearings, this is not compatible with the surrounding area, the community character, or our purposes of facilitating... And this is where they had a public interest argument where they said that we don't want to take away land that could be used for service, commercial, industrial, and let it be used for free market residential. Wasn't that a more far ranging decision than responding to a specific plan development application? In other words, wouldn't rezoning the Mill Street Plaza as mixed use have a more far wide ranging effect than just allowing free market residential development? Yes, the rezoning petition was saying take this out of the SCI zone district and put it in mixed use zone district, which has broader uses that are allowed under the code. That's what the petition was for. Now, when the city responded to that, both in its staff report and its findings of its P&Z commission and its city council, they went farther and said this doesn't satisfy these criteria. And those criteria just happened to be, in many of the same ways, the same criteria that they would have to apply to a PD review. And this is why the case law is important. Palazzolo tells us and Soutam tells us, both Supreme Court decisions, that once we have a reasonable degree of certainty about how a piece of property can be used, we're not going to make the landowner go back and back and back to see if they'll change their mind. It seems though that you're making two arguments. One is that as a matter of municipal law, if you will, the city's hands are tied now when it comes to plan development. The argument you just made is taking into account everything that happened. Is there reasonable certainty that the decision would be the same? They overlap, they seem to be different arguments. May I connect them? Please. If you read Palazzolo, it talks about, it uses the term great discretion. And so does the Soutam case. It says when land use authorities and regulators have great discretion, then we're not going to find finality for rightness purposes. Here, that discretion has been taken away by the city itself, both in the enactment of Ordinance 29 and its own findings saying that we're bound to the Aspen Area Community Plan and the Civic Center Master Plan. By telling us that, saying this use will not satisfy the criteria needed to develop free market residential, that discretion is gone. It's no longer a mystery what the city will do. Now, I suppose conceivably the city could violate its own regulatory documents and code, but that wouldn't be lawful. And I don't think that opposing counsel can rely on the city's disregarding of its mandatory land use protocols to say that they escape having to go to court on the takings claim. This is going to be a slightly different question, but it has to do with rightness. As I was reading the cases, it seems like Williamson County, Sweden, talk about the final decision requirement in terms of prudential rightness. Would you agree with that? I'm not sure I know which cases you're referring to. I just told you, Williamson and Sweden. Well, in Williamson, I think the pendulum has turned in Byron Heights. No, I'm just asking, is this a prudential rightness case or an Article III rightness case? I think this is prudential, Your Honor. Now, it's what I can tell from... And is there a problem that if it is prudential, that it was decided under 12b-1 in district court as opposed to 12b-6? I think the 12b-1 analysis is why we are saying that the futility exception to finality should apply. And I would ask the court to look at what the 1st, 2nd, 6th, 7th, and 9th circuits have all done. They say if you submit one meaningful application that's denied and you have reasonable certainty as to what you can and cannot do on a piece of property, then you have satisfied the finality requirement for rightness. And if you don't mind, I would like to save the balance of my time for rebuttal. Yes, good morning, Your Honor. Josh Marks on behalf of the City of Aspen. Counsel for Appelli. This case presents, I think, a pretty straightforward application of rightness. We have a developer... Prudential? You know, I was thinking about your... When we're talking about Williamson and Yolo County and all the Supreme Court cases seem to have approached it originally from, I think, jurisdictional rightness. And so, I don't think they've clarified it since that. Because we're talking about whether agency action has been specific enough and final enough for this court's review. So, I think it's more in the realm, actually, of jurisdictional rightness under 12b-1. And that's the motion you brought, right? Correct. Okay. Why don't we just pick up where opposing counsel sort of left off. Why is it not the case that the city's hands are tied in this situation? Clarify for me why that assertion, if it is your view, is not correct. It is not correct. And it may take a little while to unpack because it's on a couple levels, both factual and legal levels. And factually, the assertion was that the city denied the prior attempt to rezone this because of noncompliance with some of these regulatory plans or community planning documents. And if you go back and look at the record, it doesn't support that. The staff report brought it up as one of the criteria for, that wasn't satisfied in their view. But when it went through the planning commission, and there's a planning commission finding in the record, it just says it's denied for failure to meet all the criteria. There's a number of criteria for rezoning, not just the one. They never called it out. And then when it got to the city council level, and we have the minutes, and it's a combination of transcript and minutes, the city council members never mention the community plans here as the reason why they're turning down the rezoning request. They're more interested in preserving the existing zoning and the goals of the existing zoning, which was to preserve light industrial and commercial uses in this area. So the subtext I take from what you're saying is that whatever the staff said should not be deemed to have control of the city's discretion in making this determination. Yes, yes. Yes, when you go back and dig down, you can't claim that the city council, the decision makers said, well, this violates the regulatory plans and therefore we're denying the rezoning. So their hands aren't tied factually because they never got there. And then legally, of course, they're very different criteria. As Judge Baldock pointed out, the use variation standards that opposing council alluded to, those are not located in the rezoning standards. They are unique. The citation you received, which was section 26.445.060, that's embedded in the plan development regulations. And they're unique to that. There's nothing that, first of all, that indicates they are the same in the rezoning. But more importantly, when you go and you read that entire section, what it says is that the existing uses of the existing zoning on the property may serve as a guide, but it's not a limitation at all to what the city can do in a plan development approval. So they have the flexibility to depart from what's there currently. And then it goes on to say the council shall consider a number of factors, one of which is whether the variation complies with some of the regulatory plans. But it's not couched in terms of this can only be approved unless it complies, which is more mandatory. Instead, the language lends itself to it's something that must be considered. And here's why it's important. There's flexibility in that because oftentimes, let's take this project, for example. What's proposed is going to be a combination of some of the light industrial uses, the commercial uses, some affordable housing, and then some free market housing. And what's important is that many of those uses are totally compliant with the community plan for this area. While maybe the free market is not, but as a whole, it may overall comply with the regulatory plan. And so that's why there's enough discretion in both the standard and the criteria that allows the city to consider these kinds of exceptions. Well, is there a priority in going before whoever you're voting for in filing a rezoning application versus the planned development application? Does the developer get to choose which one he wants to go to first? There's no priority. Okay, so if I go to the rezoning, file the application there, and I'm turned down, do I have to then go to the planning development? Or I've waited? There's no requirement that says you must pursue a planned development plan. But because of the rightness requirements, though, it is a requirement. Does one overrule the other? Does one overrule the other that if you go this way and it's denied, you're finished? No, no. It does not. In fact, the way it operates is that someone could apply for 10 rezoning requests, get denied, come through the planned development process, and get approved for what they want. And that becomes the zoning. Planned development is this kind of hybrid in which they establish kind of site-specific zoning based on a project plan. It's not zoning in the abstract, which says this is residential zoning and these are all the allowable uses. If I'm turned down and I don't go to the planned development, am I precluded because I haven't exhausted my remedy? You are precluded from bringing constitutional claims under rightness, right? You as a developer could get your project approved. So I have to go then to planned development if I'm turned down and rezoned? Yes, if you want to bring those constitutional claims, you do. Are you contending? I want to see how far you're willing to go with that. What if they go for rezoning 10 times and they're turned down every time? Isn't there a scenario under which the writing truly is on the wall and whether they go to planned development or not, they're done? Or do you always have to go to planned development to have a right claim? I mean, that's a pretty strong rule. It is, and rightness is not this kind of talismanic thing that says you must do X, Y, and Z in every scenario. I think it's somewhat flexible depending upon the regulatory structure of each community. It does seem like you're almost equating exhaustion with rightness. Well, they overlap in a sense, but I'm not. I agree at some point, like in the Palo Zolo case, for example. It was clear that that developer couldn't get this wetlands permit to fill the land because they had tried a couple times, and it was clear the community wasn't going to allow it to fill, and the court said enough's enough. You don't need to keep doing it over and over again. But here, planned development, like I said, is this really unique kind of way in which you can rezone on a site-specific basis with a plan in mind. And if you read the comments of the city council, when they denied the planned development, they were very open to receiving something on a more site-specific basis because then they could wrap their heads a little bit better about how much free market they were going to allow through a more specific process. And that's far different from a zoning scheme, which says you can have free market as a matter of right, and the free market residential wipes out all of the light industrial and commercial uses you're trying to preserve. So that's what I'm saying. The two are real consistent here. And to play this out then, these situations are going to be driven by the facts of the particular case, right? And so in this situation, let's say, as I understand it, your view is as a matter of fact, the city council did not specify things that would have tied its hands. So we could contemplate or conceive of a situation where that would not be the case, right? That they could have said certain things that would have made it inevitable, that if they had used the use variation line of avenue of relief, they would not prevail. Sure, if they had said something that made it fixed enough that everyone would be satisfied, that going through a planned development process is useless, I could conceive of that as well. That's when I concede that. But that's not this case. This is a case where we have an applicant who's never submitted a plan to the city. Can a city council really bind a future city council? No, that's the other point. It's an election and it's a new set of members. We know that the city council and the city of Aspen has changed hands significantly since 2000 and, what was it, 2017 when the first set of rezoning, the first rezoning occurred, and since 2019 when the rezoning attempt occurred. So yes, they change and people have different thoughts on what should happen in a community, zoning-wise. That's a very plausible reason why you need to go through some of these processes and not proactively rule them out. The other thing I wanted to mention, the appellant here has mentioned the Nick case, and I think it's important that Supreme Court in Nick dealt with a completely different aspect of the rightness doctrine. It used to be that rightness had two prongs under Williamson County. The first one was the final decision prong, which is what we're talking about. And in Nick, the Supreme Court, and let me finish this out, and then the second prong was that an applicant had to first resort to just compensation remedies under state law before the matter was right. And the Supreme Court got rid of the second prong and said that's really not what we meant in our rightness inquiry, and so we're jettisoning that second one. The Supreme Court didn't touch the first one. It hasn't altered it in any way, shape, or form. And I don't think you can extrapolate anything more from that decision in terms of affecting the first prong. And certainly no court has relaxed the requirements of final decision rightness in light of Nick. Is final decision any different from futility? Well, I think that, I know this court has never recognized futility as a stand-alone exception to finality in this rightness context. It's dodged it in various ways. It's assumed that it exists. I think it's all wrapped up in the same analysis, to tell you the truth. I mean, that to me is kind of what Palazzolo, that's my takeaway from Palazzolo. They didn't say, well, the landowner's excused because of futility. It just said there was enough of a final decision, enough attempts had been made, that the landowner doesn't need to move forward any further. And so I think it can be wrapped up all in the same inquiry as opposed to a stand-alone exception. At the end of the day, Your Honor, even if this court entertains a little bit of doubt as to whether the PD process is going to be successful or not, this court should not be prognosticating over whether it's going to be successful or not. And the best medicine for determining whether finality exists is to make someone go through the process. Thank you, Your Honors. Thank you, Counsel. A couple of points. To answer your question, finality is a recognized exception. Futility is a recognized exception to the finality requirement for rightness. And there are other circuits that have said you need to have one meaningful application. That's the 1st Circuit, that's the 2nd Circuit, the 6th Circuit, the 7th Circuit, and the 9th Circuit. And the 11th Circuit has applied it without adopting it formally. We believe, if you look at your case law, Landmark is really the most recent case we have, and that's from 1989. That predates Palazzolo, it predates Sudham, it predates Ned. We think that this area of law needs to be updated to where you say if an applicant applies, and then it's the reasonable degree of certainty issue that matters. Now, opposing counsel wants to say you've got to go with a PD because that has the most flexibility. But when the city has told us, both in its staff reports and at P&Z and at City Council, and I've got some sites for you on that, the rezoning application was denied based on the fact that free market residential development is inconsistent with the direction of the Civic Center Master Plan. That's in the Appellant's Appendix, Volume 2, at page 31. Who's speaking in you saying that? Who's speaking in that? That was in the staff report that was adopted in the resolution. Well, speak to the question of whether the staff report, what is the weight of the staff report when the City Council itself, at least according to opposing counsel, did not articulate that inconsistency? Well, here's some comments that the City Council members made. They made specific reference to the rezoning application's failure to meet the compatibility criteria applicable to these types of applications, and they referenced and cited staff's recommendation that the proposal be found not to be compatible with surrounding uses or community character. That's in the Appellant's Appendix, Volume 3, at pages 24 to 25. And staff, in its presentation at that meeting, also pointed out that rezoning the property would result in loss of SCI land, which is also a reason that a PD asking for free market use would not be allowed. I see that I've exceeded my time. Unless there's any other questions, I'll sit down. Thank you. Thank you. Thank you for your arguments, counsel. Case is submitted.